## STATE v. ROYAL MINERAL ASSOCIATION.[1]

February 4, 1916.

Nos. 19,470—(17).

**Mining lease.**

1. Instruments called mining leases involved in this action are leases in fact as well as in name, and the amounts stipulated to be paid by the lessees are rents.

**Same — unaccrued rents not personalty.**

2. Unaccrued rents are not personal property. They are incorporeal hereditaments. They are an incident to the reversion and follow the land. Though separable from the land, they are, until such separation, part of the land.

**Taxation — "credits" do not include unaccrued rents.**

3. Our statutes provide for the separate assessment of real and personal property. By the terms of the statutes, real property includes the land and all privileges thereto belonging; credits include every claim and demand for money and every sum of money receivable at stated periods, due or to become due. Credits are, however, personal property and they include only such demands as are classed as personalty. The term does not include unaccrued rents to issue out of land.

**Same — unaccrued rents not taxable.**

4. Rents due in July, for the period from April 1 to July 1, are not taxable as credits May 1.

In the matter of proceedings to enforce the collection of personal property taxes for the year 1913 delinquent in 1914, defendant filed an answer. The matter was heard before Cant, J., who made findings and ordered judgment against defendant for $107.18. From the judgment entered pursuant to the order for judgment, defendant appealed. Reversed.

*Washburn, Bailey & Mitchell,* for appellant.

*Charles E. Adams,* for respondent.

[1] Reported in 156 N. W. 128.

HALLAM, J.

The defendant was assessed for the year 1913 for "credits" at a valuation of $30,000. The alleged credits were made up of the minimum amounts agreed to be paid under certain iron mining leases of land owned by defendant in this state. These instruments are nine in number. They run for a fixed term, in most cases for 50 years from their date, but are terminable by the lessees on notice. Eight of them are terminable on 30 days' notice, one of them on 90 days' notice. One of these instruments is submitted as a fair sample of all. It is a lease in form. It grants possession to the lessee. It provides that the lands are leased for the purpose of exploring for, and mining and taking out, ore, and authorizes the lessee to construct all buildings, ditches, drains, wagon roads, railroads and other improvements on said land incident to such mining operations, and gives the right to cut certain of the timber on the land for fuel and other purposes incident to such operations. The lessee agrees to mine and remove at least 150,000 tons of ore annually and to pay a royalty of 25 cents per ton upon all ore mined, or at his option to pay "an advance royalty, which shall be treated and considered as ground rent," of 25 cents per ton on said minimum, though less than the minimum is mined, or none is mined at all. This "advance royalty" is payable in advance, it may be, of mining operations. It is not, however, payable in advance as that term is commonly used in leases, but it is payable in the months of January, April, July and October of each year for the three months next preceding.

The trial court held that the amounts to fall due in the future on these mineral leases were "credits," within the meaning of our tax laws, and were taxable as personal property. The propriety of this ruling is the question before this court.

1. At the outset it is important to consider the nature of these so-called mining leases. Their nature is not an open question in this state. It is settled that they are leases in fact, as well as in name. State v. Evans, 99 Minn. 220, 108 N. W. 958, 9 Ann. Cas. 520; Boeing v. Owsley, 122 Minn. 190, 142 N. W. 129. These decisions are in accord with the great weight of authority. Raynolds v. Hanna, 55 Fed. 783; Tennessee Oil, Gas & Mineral Co. v. Brown, 131 Fed. 696, 65 C. C. A. 524; Gartside v. Outley, 58 Ill. 210, 11 Am. Rep. 59; Consolidated Coal Co.

v. Peers, 150 Ill. 344, 37 N. E. 937; Kissick v. Bolton, 134 Iowa, 650, 112 N. W. 95; Austin v. Huntsville Coal & Mining Co. 72 Mo. 535, 37 Am. Rep. 446; Genet v. G. & H. C. Co. 136 N. Y. 593, 32 N. E. 1078, 19 L.R.A. 127; Denniston v. Haddock, 200 Pa. St. 426, 50 Atl. 197; Coolbaugh v. Lehigh & Wilkes-Barre Coal Co. 213 Pa. St. 28, 62 Atl. 94, 4 L.R.A.(N.S.) 207; Gallagher v. Hicks, 216 Pa. St. 243, 65 Atl. 623; Hollenback Coal Co. v. Lehigh & Wilkes-Barre Coal Co. 219 Pa. St. 124, 67 Atl. 987; Girard Trust Co. v. Delaware & H. Co. 246 Pa. St. 161, 92 Atl. 129; Ganter v. Atkinson, 35 Wis. 48; Quoon v. Westbrook, 10 Q. B. 178, 205; see also Hyatt v. Vincennes Bank, 113 U. S. 408, 5 Sup. Ct. 573, 28 L. ed. 1009; United States v. Gratiot, 14 Pet. 526, 10 L. ed. 573.

The earlier Pennsylvania cases announced the doctrine that such instruments were sales of the mineral in place. Hope's Appeals, 3 Atl. 23, 29 W. N. C. (Pa.) 365; Caldwell v. Fulton, 31 Pa. St. 475, 72 Am. Dec. 760; Tiley v. Moyers, 43 Pa. St. 404, 410; Eley's Appeal, 103 Pa. St. 300, 303; Delaware, L. & W. R. Co. v. Sanderson, 109 Pa. St. 583, 1 Atl. 394, 58 Am. Rep. 743. On this point these earlier cases are overruled by the later cases above cited, which hold, in substance, that while a contract regarding mineral in place may be a sale, or a lease, or a license, depending on its terms, an instrument such as the instruments we have here under consideration is "at common law a lease without impeachment of waste;" that the amount paid by the lessee is rent and not the purchase price of mineral in place; that the lessee is in the position of a lessee of a house, bound to pay rent whether he occupies it or not. Denniston v. Haddock, 200 Pa. St. 426, 428, 429; Girard Trust Co. v. Delaware & H. Co. 246 Pa. St. 161, 92 Atl. 129. Few, if any, state courts follow the early Pennsylvania decisions. They have been followed in some Federal cases arising under the laws of Pennsylvania. Plummer v. Hillside Coal & Iron Co. 104 Fed. 208, 43 C. C. A. 490; Wilmore Coal Co. v. Brown, 147 Fed. 931. Von Baumbach v. Sargent Land Co. 219 Fed. 31, 134 C. C. A. 649, follows the same rule.

We adhere to the doctrine of the Evans and Boeing cases, and hold these instruments leases. It follows logically that the amounts stipulated to be paid by the lessees are rents, and they were expressly held by this court to be rents in the Boeing case, supra, a case which involved

a construction of the very leases now before the court. They are "the compensation which the occupier pays the landlord for that species of occupation which the contract between them allows." Lord Dennison, in Queen v. Westbrook, 10 Q. B. 178, 205.

2. Having determined that the unaccrued payments on these leases are rents, the remaining questions are easy of solution. If these amounts are rents, we are unable to distinguish them from any other ground rents. If these rents while not yet due are taxable as credits, then all other unaccrued ground rents are so taxable.

Unaccrued rents are not personal property. They are incorporeal hereditaments. They are an incident to the reversion and follow the land. Burden v. Thayer, 3 Metc. 76, 37 Am. Dec. 117; Mahoney v. Alviso, 51 Cal. 440; Broadwell v. Banks, 134 Fed. 470. They pass with a sale or devise of the land. Martin v. Royer, 19 N. D. 504, 125 N. W. 1027; Stone v. Snell, 86 Neb. 581, 125 N. W. 1108; Hammond v. Thompson, 168 Mass. 531, 47 N. E. 137. If transferred apart from the land, the provision of the statute of frauds relating to sales of land applies. Brown v. Brown, 33 N. J. Eq. 650, 659; King v. Kaiser, 3 Misc. (N. Y.) 523, 23 N. Y. Supp. 21; Browne, Statute of Frauds (5th ed.) § 230. In fact, although separable from the reversion, they are, until such separation, part of the land (Scully v. People, 104 Ill. 349; Pollock v. Farmers' Loan & Trust Co. 157 U. S. 429, 580, 15 Sup. Ct. 673, 39 L. ed. 759); "for what is the land but the profits thereof?" 1 Co. Lit. 4b.

3. The power of the legislature in classifying subjects for taxation is, under present constitutional provisions, exceedingly broad. Const. art. 9, § 1. It is not controverted that the legislature could impose a tax upon these rents or royalties in addition to the general tax upon the land. The question here is, has the legislature done so?

Our statutes provide for the separate assessment of real and personal property. Real estate is defined as follows:

"Real property, for the purposes of taxation, shall be construed to include the land itself   *   *   *   and all rights and privileges thereto belonging or in any wise appertaining, and all mines, minerals   *   *   * under the same." G. S. 1913, § 1972.

Provision is made for the separate assessment of real property and for levy and collection of taxes upon it.

Section 1974 defines personal property and includes in the definition "credits." Section 1975 defines credits as follows:

" 'Credits' shall mean and include every claim and demand for money or other valuable thing, and every annuity or sum of money receivable at stated periods, due or to become due, and all claims and demands secured by deed or mortgage, due or to become due."

Section 1994 provides for the listing of personal property. Section 2317 provides that credits must be listed as personalty but upon a separate blank from "other personal property," and section 2316 provides for the taxation of credits.

In determining whether unaccrued rents are to be taxed as "credits," we must bear in mind that the land, including the rents and profits, which alone give it value, has already once been taxed. We must bear in mind also the principle that such a construction should be adopted as will avoid double taxation, unless a contrary interpretation is required either by express provision of the statute or by necessary implication. Board of Co. Commrs. of Rice County v. Citizens' National Bank of Faribault, 23 Minn. 280.

The definition of credits is broad, but credits are personal property and so regarded throughout our statutes. It appears clear that there was no purpose to break down the lines between real and personal property, or to bring within the provisions for assessment of personal property any property which was in its essential nature realty, and that the term "credits," as used in the taxing statutes, embraces only choses in action which are in their nature personal property. It follows that these rents are not taxable as "credits."

These views are in accord with the practical construction which these statutes have always received. The taxation of credits is not new. The definition of the term is not new. The same definition has obtained since 1878. G. S. 1878, c. 11, § 4. Never have rents or royalties to accrue on mining leases been taxed as "credits." Never has any other class of rents been taxed as "credits."

Nor is there any reason or logic in taxing only the rents to accrue during the current year. If rents unaccrued, but to accrue during the remainder of the current year, are taxable as "credits," then all rents to accrue during the whole period of the lease are so taxable, for they

are equally "sum[s] of money receivable at stated periods * * * to become due." If unaccrued rents are "credits" then when credits were taxed at their full value, as they were under R. L. 1905, § 810, the tax on unaccrued rents on long leases would have largely consumed the annual rent, and this notwithstanding the fact that the land had once been taxed as other land.

Our conclusion is that unaccrued rents are real estate, that they are taxed under our tax laws by taxation of the real estate, and that they are not taxed as personal property, and are not to be listed or taxed as "credits."

Hull v. County of Luzerne, 93 Pa. St. 502, is cited as an authority to the contrary. In that case the rent or royalty was past due, and the lessee had been paying interest thereon for two years under an agreement which provided that, if the lessee failed during any year to mine and pay for the minimum, interest should be allowed on any balance until the deficiency should be mined. The amount so accrued was held taxable as an amount due on an "article of agreement and account bearing interest." The case is not an authority here.

4. The state contends that in any event the proportion of the rent for April, 1913, is taxable May 1. If rent were payable monthly this would doubtless be true. This amount would then be simply an item of money due and payable. But it is payable quarterly. No rent accrued on May 1, nor until July 1. Rent not due is real estate, whether it is partly for the period that has already elapsed or wholly for the period to come. Jones, Landlord & Tenant, § 658; Scully v. People, 104 Ill. 349; People v. McComber, 24 N. Y. St. 902, 7 N. Y. Supp. 71.

Judgment reversed.