ESTELLE RUST DeVELIN, ARTHUR W. GANSCHOW AND CHARLES J. REYNICK, TRUSTEES OF THE MAXINE RUST TRUST, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTELLE RUST (ESTELLE RUST DeVELIN), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTELLE RUST DeVELIN, ARTHUR W. GANSCHOW AND CHARLES J. REYNICK, EXECUTORS OF THE ESTATE OF EZRA RUST, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 15377, 15420, 17533. Promulgated April 30, 1931.

*W. E. Hayes, Esq., Charles D. Hayes, Esq.,* and *John C. Hayes, Esq.,* for the petitioners.

*Arthur H. Fast, Esq.,* for the respondent.

OPINION.

Van Fossan: The first question presented for our consideration is whether the payments made to the petitioners under the provisions of the will of Ezra Rust and according to the terms of the lease dated October 2, 1899, were distributions of the corpus of the estate of Ezra Rust or constituted income to the recipients.

It is to be borne in mind that the question before us arises under a Federal taxing statute. We are not here concerned with the general laws of property rights as such, nor are we called upon to delve into the niceties and tenuous distinctions that arise in such a study. We believe the law of this case to be well settled by the decisions of the Supreme Court of the United States. In *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503, the Supreme Court held that mineral royalties received by the lessor corporation under the provisions of a mining lease strikingly similar to the one before us were income within the meaning of the taxing statute. The Court said:

\* \* \* We think that the payments made by the lessees to the corporations now before the court were not in substance the proceeds of an outright sale of a mining property, but, in view of the terms of these instruments, were in fact rents or royalties to be paid upon entering into the premises and discovering, developing, and removing the mineral resources thereof, and as such must be held now, as then, to come fairly within the term "income" as intended to be reached and taxed under the terms of the Corporation Tax Act.

See also *United States* v. *Biwabik Mining Co.*, 247 U. S. 116, where the Court had for consideration the status of the lessee under the income tax statute; *Henry L. Berg*, 6 B. T. A. 1287; *C. E. Van Devender*, 8 B. T. A. 697. That an instrument such as the one here involved is a lease with rents and royalties and not a sale of any part of the land has long been the law of Minnesota. *State* v. *Evans*, 99 Minn. 220; 108 N. W. 958; *State* v. *Royal Mineral Association*, 132 Minn. 232; 156 N. W. 128. The character of the rents or

royalties so received is not altered by reason of having been obtained through bequest or inheritance. *Marion Stone Burt Lansill*, 17 B. T. A. 413.

Petitioners contend that the decree of the probate court of Saginaw County, Michigan, entered January 17, 1930, is determinative of the nature and character of the amounts received by the executors and trustee of the Ezra Rust estate and that, accordingly, these amounts were part of the corpus of the estate and not taxable. While the judgments and decrees of courts of competent jurisdiction import absolute verity with respect to the ownership of property and in that respect are binding on Federal courts and on this Board (*Simmons* v. *Saul*, 138 U. S. 439; *Marshall Field*, 15 B. T. A. 718), it is to be noted that in this instance the property covered by the lease was located in Minnesota, while the probate court was a court of Michigan. However, the law with respect to the question at issue is so clearly settled that we do not feel it necessary to this opinion to enter upon a discussion of the subject matter of the probate decree or to attempt a decision as to the exact legal characteristics under the law of property of the estate held by petitioners. If the inference to be drawn from the decree of the Michigan probate court leads to a different conclusion from that announced herein, suffice it to say it is contrary to the decisions of the Supreme Court of the State of Minnesota and of the Supreme Court of the United States above cited.

The petitioners further assert that the beneficiaries also acquired the fee in the leased lands and that the fee, although subject to the lease, possessed a value over and above that comprehended in the rights of the lessor. The record discloses that the land itself will be practically worthless after the expiration of the lease and that the ore will be removed within the terms specified. Furthermore, no evidence was introduced to establish the value of the fee itself. Therefore, we can allot no portion of the royalties to a return of capital, but must include the entire amounts in income.

The second point in controversy is whether or not the respondent erred in using 6 per cent as a factor representing the risk rate when he computed, according to Hoskold's formula, the depletion allowable as a deduction for each of the years 1920, 1922, and 1923. The petitioners claim that 4½ per cent is the proper rate.

The character of the mining risk here involved was discussed by qualified experts called respectively by both sides. After careful consideration of all the evidence, we are not persuaded that petitioner has proved the rate of 6 per cent allowed by the Government to be unreasonable or inadequate. *Reinecke* v. *Spalding*, 280 U. S.

227. The parties having agreed to the use of Hoskold's formula in making the computations, and having put in issue only the risk factor, we approve respondent's action in this respect.

*Decision will be entered for the respondent.*